UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2006-230

HAROLD KELLS                                        PLAINTIFF

VS.            MEMORANDUM OPINION and ORDER

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                    DEFENDANT

This matter is before the court on the plaintiff's motion for summary judgment (Doc. 10) and the cross-motion for summary judgment of the Commissioner (Doc. 11).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298, 300(6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

In order to qualify for disability benefits, a claimant must establish that he is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines "disability" as the "inability to engage in any substantial

1

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity." Id. at 534(citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)(citing 20 C.F.R. 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate he suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities." Id. (citing 20 C.F.R. §§404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. Id. Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the

national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, the claimant was fifty-nine years old and has a high school education. His past employment has included work as a truck driver and hostler. The claimant alleges he became disabled on October 1, 1999 due to the effects of lumbar disc disease and mild stenosis.

Claimant's date last insured is December 31, 2004. Thus, the court must determine whether the claimant's condition on or before December 31, 2004 rendered him disabled.

At the hearing, the ALJ sought the testimony of the claimant and a vocational expert. Upon hearing the testimony at the hearing and reviewing the record, the ALJ performed the requisite five step evaluation for determining disability.

The ALJ determined at step one, that claimant had not been engaged in substantial gainful activity since the onset of disability. At step 2, the ALJ determined that the claimant's chronic lumbar strain was his only severe impairment. At step 3, the ALJ determined that the claimant does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1. At step 4, the ALJ found, based upon the vocational expert's testimony, that the claimant could perform his past relevant work as a truck driver and a hostler. Having found that the claimant can perform his

past relevant work, the ALJ concluded that the claimant was not disabled.

The claimant argues that the ALJ erred in finding that he was not disabled prior to his date last insured of December 31, 2004. The claimant argues that although the medical evidence is scant between 1997 and 2004, the ALJ should have adopted his testimony that the lack of medical evidence is due to his doctors determining that little could be done for him.

The ALJ explained his finding that claimant's impairment did not relate back to the date last insured:

> There are no full, formal residual functional capacity assessments either from the state agency or from treating sources. State agency evaluators found no "severe" physical impairment prior to the date last insured (Exhibits 6F, 7F). The most significant weight [is] given to the opinions of orthopedists, Drs. Stallworth and Gavigan, who treated the claimant from February 27, 1997 to August 19, 1997. The only limitation provided by these doctors was a lifting limitation of 60 pounds. In fact, on August 19, 1997, Dr. Gavigan released the claimant back to his prior job, presumably as a truck driver, with only a 60 pound lift limit. (Exhibit 1F/3-6).
>
> The claimant said [that] he could have lifted up to 60 pounds before December 2004, but only for 2 or 3 times in an 8 hour period. He also said that, before December 2004, his ability to sit, stand, and walk[] were markedly limited and that bending was especially painful. The claimant is given some benefit of the doubt and is limited to lifting and carrying 50 pounds occasionally and 25 pounds frequently. There is absolutely no substantial objective evidence which would further limit his capacity in this regard before December 31, 2004.
>
> State agency evaluators found no "severe" impairment (Exhibits 6F, 7F). However, as aforesaid, the claimant is given some benefits of the doubt. Also, Dr. Ellington, evidently, was unaware of the 60 pound limit discussed above and of the lumbar MRI dated September 15, 1997. The MRI, at worst, revealed moderately severe disc narrowing at L4-5, which caused only mild acquired stenosis. There was no other evidence of local nerve root impingement, and the

4

>    foramina remained patent.  There were also mild findings at
>    the other levels (Exhibit 2F/2).  However, the above MRI
>    findings are not clinically correlated.  On August 19, 1997,
>    the claimant had a normal gait.  Straight leg raising
>    testing was normal, without muscle spasms.  The leg
>    neurological exam was normal. (Exhibit 1F/3).
>
>    Although the claimant received an epidural steroid injection
>    on September 29, 1997 (Exhibit 3F/2), the only other
>    examination of the claimant's low back pain between
>    September 29, 1997 and December 31, 2004 was Dr. Ellington's
>    consultative examination performed at the request of the
>    Disability Determination Service on May 23, 2004.  Dr.
>    Ellington's examination was essentially normal, and Dr.
>    Ellington found absolutely no limitations on the claimant's
>    ability to perform work-related activity (Exhibit 5F).
>
>    The only other examinations before December 31, 2004 were
>    performed by Dr. Quatkemeyer, who became the claimant's
>    treating primary care physician on or about January 12,
>    2001.  At what seems to be the first visit on January 12,
>    2001, Dr. Quatkemeyer noted chronic back strain and a
>    complaint of a swollen left ankle with walking. No edema was
>    found.  It is difficult to read Dr. Quatkemeyer's writing
>    regarding any attempt to examine the claimant's back.  He
>    prescribed Relafen (Exhibit 9F/18).
>
>    The next documented visit was May 31, 2002. Before December
>    31, 2004, Dr. Quatkemeyer also saw claimant on May 9, 2003
>    and November 22, 2004.  Dr. Quatkemeyer did not even mention
>    the claimant's back after January 12, 2001, until after the
>    date last insured (Exhibits 10F/1, 9F/2, & 9F/16).  Indeed,
>    on November 22, 2004 which was considered to be a yearly
>    physical examination, the only concern was the claimant's
>    enlarged prostate, which turned out to be benign hypertrophy
>    (Exhibit 9F/16).  On April 8, 2005, the first visit after
>    December 31, 2004, back pain was mentioned, but no physical
>    exam was documented.  The claimant's pain was reportedly
>    fine on 800 mg. of Motrin (Exhibit 10F/3).
>
>    Unfortunately, the claimant developed radiculopathy in his
>    right leg, but that was not until January 2006, well after
>    the date last insured.  Dr. Shahbabian performed a lumbar
>    laminectomy with removal of a free fragment disc at L3-4 on
>    April 5, 2006.  He reported that the claimant could not work
>    for a year or more (Exhibit 9F/2).  The claimant agreed with
>    Dr. Shahbabian's note that he did not have any radicular
>    symptoms before December 31, 2004 and that his right-sided
>    radiculopathy did not start until about January 2006.

(AR 15-16).

5

The claimant has the burden of establishing that post-expiration evidence relates back to his condition prior to the expiration of his date last insured. See Wirth v. Commissioner of Social Security, 87 Fed. Appx. 478 (6th Cir. 2003)(citing King v. Secretary of Health and Human Servs., 896 F.2d 204, 205-06 (6th Cir. 1990).

Here, the claimant has not presented any objective evidence to demonstrate that his impairment was of a disabling nature prior to his date last insured. In fact, although the record demonstrates that the claimant stopped working for approximately nine months in 1995, he returned to work with minimal restrictions. In 1997, the claimant stopped working for several weeks, but returned to work with only a 60-pound lifting restriction and a bending restriction. (AR 72, 107, 110).

The claimant also testified that because of his back pain he performed light work for the last three or four years before he retired. (AR 194-2001). The claimant defined light work, however, as lifting no more than 60 pounds. The court also notes that no physician has offered an opinion that the claimant was disabled prior to December 31, 2004. Accordingly, the court finds that substantial evidence exists to support the ALJ's decision that the post-expiration evidence does not relate back to the claimant's condition prior to the expiration of his date last insured.

The claimant also argues that the ALJ erred in failing to give any weight to the medical evidence obtained after December

6

31, 2004. As discussed above, the ALJ did consider Dr. Shahbabian's treatment after December 31, 2004. Dr. Shahbabian's consultation report states, however, that claimant's problem in 2006 was not related to his L4-5 impairment, but was caused by an impairment at the L3-4 level. The court finds that the ALJ did consider the medical evidence obtained after the claimant's last date insured, but specifically found that the evidence did not relate back to claimant's condition prior to December 31, 2004.

The claimant also argues that the ALJ erred in not finding the claimant's testimony fully credible. The Sixth Circuit has held that:

> an ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability. [Jones v. Commissioner of Social Security, 336 F.3d 469, 476 (6th Cir. 2003), citing Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997)]. Notably, an ALJ's credibility determinations about the claimant are to be given great weight, "particularly since the ALJ is charged with observing the claimant's demeanor and credibility." However, they must also be supported by substantial evidence. Walters, 127 F.3d at 531.

Cruse v. Commissioner of Social Security, ___ F.3d ___, 2007 WL 2752888 (6th Cir. Sept. 24, 2007).

Here, the ALJ explained his reasons for discrediting the claimant's testimony. Specifically, the ALJ stated:

> The claimant's subjective complaints and allegations are partially but not fully credible. No treating source found the claimant disabled until well after December 31, 2004, in 2006. The claimant's testimony on disabling low back pain between 1999 and December 31, 2004 is inconsistent with the fact that he did not see a back specialist until he saw Set Shahbabian, MD, in March 2006. When asked why he had not seen a specialist before then, the claimant answered that he was told by unnamed doctors that there was nothing anyone could do to alleviate his low back pain. There is

7

>absolutely no documentation to support his statement in this regard. The claimant's reliance solely on 800 mg. doses of Motrin before December 31, 2004 is inconsistent with the severity and frequency of low back pain alleged by the claimant before his date last insured.
>
>. . .
>
>In addition, the claimant somewhat exaggerated the degree to which his activities of daily living had been limited by low back pain before December 31, 2004. He admitted, however, that he was more active before December 2004 than before his recent back surgery. For example, he did not mention that he went to just about all of his daughter's home basketball and volleyball games before December 2004. The claimant testified that, on or before December 2004, he was able to vacuum, mow the lawn, drive and drive alone, grocery shop alone, but only for a few things, do the laundry, and attend church once a week. Some of the above tasks were usually done by his wife, but the claimant said he would have been physically able to perform the above if asked to do so.

(AR 15).

The court finds that the ALJ properly articulated his reasons for finding the claimant less than fully credible. Absent compelling reasons, this court should not disturb the ALJ's credibility findings. Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001). The court finds substantial evidence supports the ALJ's credibility decision and, therefore, it will not be disturbed.

Lastly, the claimant argues that the ALJ erred in not considering the vocational expert's statement that if he considered the limitations set forth in the claimant's testimony then the claimant would be unable to perform any work.

The Sixth Circuit has held that a hypothetical question need only include the limitations that the ALJ finds are credible and supported by the evidence. Delgado v. Commissioner of Social

8

Security, 30 Fed. Appx. 542, 548(6th Cir. 2002)(citing, Casey v. Secretary of Health and Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993).

The court has thoroughly reviewed the record, including the transcript of the vocational expert's testimony, and finds that the ALJ set forth the functional restrictions that he found credible based upon the record. The claimant's attorney proffered the third hypothetical question that asked the vocational expert to consider the claimant's testimony. The ALJ is not required to accept the vocational expert's testimony to hypothetical questions that incorporate limitations he finds unsubstantiated. Id.

The court finds that the limitations set forth by the ALJ are consistent with the medical records. The vocational expert's testimony constitutes substantial evidence to support the ALJ's decision that the claimant can perform his past relevant work. Delgado, 30 Fed. Appx. at 548.

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court holds that the findings of the ALJ are supported

9

by substantial evidence. Accordingly, the claimant is not disabled within the meaning of The Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 10) be, and it hereby is, **denied** and the cross motion for summary judgment of the Commissioner (Doc. 11) be, and it hereby is, **granted**. That this matter be, and it is, hereby dismissed and stricken from the docket of this court.

This 25th day of October, 2007.



Signed By:
*William O. Bertelsman* WOB
United States District Judge

10